UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

-----------------------------------------------------------

United States of America,          File No. 12CR26 (20)
                                         (JRT/JSM)
          Plaintiff,

vs.                                Minneapolis, Minnesota
                                   June 11, 2012
Shelby Gene Boswell,               2:40 P.M.

          Defendant.

-----------------------------------------------------------

BEFORE THE **HONORABLE JOHN R. TUNHEIM**
UNITED STATES DISTRICT COURT
**(CHANGE OF PLEA HEARING)**


APPEARANCES
For the Plaintiff:        United States Attorney's Office
                          **ANDREW WINTER, AUSA**
                          600 United States Courthouse
                          300 Fourth Street South
                          Minneapolis, Minnesota 55415

For the Defendant:        Mattox Law Office
                          **RICK E. MATTOX, ESQ.**
                          16670 Franklin Trail SE
                          Suite 250
                          Prior Lake, Minnesota 55372




Court Reporter:           **KRISTINE MOUSSEAU, CRR–RPR**
                          1005 United States Courthouse
                          300 Fourth Street South
                          Minneapolis, Minnesota 55415
                          (612) 664-5106


     Proceedings recorded by mechanical stenography;
transcript produced by computer.

1                                                              **2:40 P.M.**

2

3                                    **(In open court.)**

4            THE COURT:  You may be seated.  This is criminal

5    case number 12-26, United States of America versus Shelby

6    Gene Boswell.  We're here for a proposed change of plea.

7            Counsel, would you note your appearances?

8            MR. WINTER:  Good afternoon, Your Honor.  Andrew

9    Winter appearing on behalf of the United States.

10           THE COURT:  Mr. Winter.

11           MR. MATTOX:  Your Honor, Rick Mattox for

12   Mr. Boswell.  He is present.

13           THE COURT:  Mr. Mattox.

14           Mr. Boswell, how are you doing?

15           THE DEFENDANT:  I'm all right.

16           THE COURT:  Pardon?

17           THE DEFENDANT:  I'm all right.

18           THE COURT:  All right.  Good.  Let's have you

19   come on up to the lectern, if you would.  Now, Mr. Boswell

20   I'm informed that you are proposing to change your plea

21   today to a guilty plea in accordance with the terms of a

22   written plea agreement.

23           That would be a change of plea from the not

24   guilty plea that was entered earlier in this case, is that

25   true?

1            THE DEFENDANT:  Correct.

2            THE COURT:  And that's what you want to do today?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Okay.  Before I can accept a guilty

5      plea, there are a number of things I need to go through.  I

6      need to ask you a number of questions, specifically to make

7      a finding that you're competent to make the decision, that

8      you understand the consequences of a guilty plea, that

9      there are facts admitted to which would support a finding

10     of a criminal conviction and that no one has forced you

11     into this change of plea.

12            Do you understand?

13            THE DEFENDANT:  Yes.

14            THE COURT:  So I'm going to be asking you

15     questions.  Mr. Mattox and Mr. Winter may also ask you

16     questions during this hearing.  Therefore, you're going to

17     be a witness for the Court today, so I'm going to place you

18     under oath.

19            Okay?

20            THE DEFENDANT:  Yes.

21            THE CLERK:  Please raise your right hand.

22                        **(Defendant sworn.)**

23            THE DEFENDANT:  Yes.

24            THE COURT:  So do you understand, Mr. Boswell,

25     that you are now under oath in this proceeding.  If you

1    answer any question falsely, you could be prosecuted for

2    that?

3              THE DEFENDANT:  Okay.

4              THE COURT:  Okay?

5              THE DEFENDANT:  Yeah.

6              THE COURT:  Now, if there is a question I ask you

7    that you don't fully understand, just tell me.  I would be

8    happy to make the question more clear.  Since you're under

9    oath, it's important that you understand the question

10   before giving us an answer.

11             And if you would like to speak in private with

12   Mr. Mattox, your lawyer, during this hearing, that's fine.

13   Just step away from the lectern, and you can speak

14   privately with him.  Okay?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Let's start with some preliminary

17   questions.  Could you state your full name for the record?

18             THE DEFENDANT:  Shelby Gene Boswell.

19             THE COURT:  How old are you?

20             THE DEFENDANT:  20.

21             THE COURT:  Where were you born?

22             THE DEFENDANT:  Minneapolis, Minnesota.

23             THE COURT:  Have you lived here your whole life?

24             THE DEFENDANT:  In Minnesota, yes.

25             THE COURT:  Where else besides Minneapolis?

1                    THE DEFENDANT:  Fond du Lac and Cloquet.

2                    THE COURT:  Cloquet?

3                    THE DEFENDANT:  Yes, sir.

4                    THE COURT:  How long have you been living in

5      Minneapolis now?

6                    THE DEFENDANT:  Since '08.

7                    THE COURT:  How far did you go in school?

8                    THE DEFENDANT:  About tenth, eleventh grade.

9                    THE COURT:  So you dropped out during what, your

10     tenth grade year?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  Where were you attending high school

13     at the time?

14                   THE DEFENDANT:  Four Directions Charter School

15     over on the north side.

16                   THE COURT:  So you don't have a GED?

17                   THE DEFENDANT:  No.

18                   THE COURT:  Where have you -- do you have any

19     problem understanding or reading or writing the English

20     language?

21                   THE DEFENDANT:  No.  I'm good.

22                   THE COURT:  Okay.  Where were you last employed?

23                   THE DEFENDANT:  Never was employed.

24                   THE COURT:  Never had a real job?

25                   THE DEFENDANT:  No.

1          THE COURT:  Okay.  At any time in your life, have

2     you been treated for mental illness or any form of mental

3     disability?

4          THE DEFENDANT:  No.

5          THE COURT:  Any depression?

6          THE DEFENDANT:  No.

7          THE COURT:  Any ADHD or anything like that?

8          THE DEFENDANT:  No.

9          THE COURT:  Okay.  Ever been treated for

10    addiction to drugs or to alcohol?

11         THE DEFENDANT:  I been to treatment a couple of

12    times.

13         THE COURT:  What kind of treatment and --

14         THE DEFENDANT:  Chemical dependency.

15         THE COURT:  For drugs or alcohol or both?

16         THE DEFENDANT:  Drugs, both.

17         THE COURT:  Both?  Where did you have treatment?

18         THE DEFENDANT:  Mish-ka-wisen Treatment Center up

19    on Fond du Lac Reservation.

20         THE COURT:  When was that?

21         THE DEFENDANT:  '05, '06 or something.

22         THE COURT:  Just once there?

23         THE DEFENDANT:  Twice.

24         THE COURT:  Twice?

25         THE DEFENDANT:  Yeah.

1           THE COURT:  Did you successfully complete the

2    programs?

3           THE DEFENDANT:  First time I failed.  Second time

4    I completed it.

5           THE COURT:  All right.  How long was the one you

6    completed, how many weeks?

7           THE DEFENDANT:  45 days.

8           THE COURT:  45 days?  Okay.  Do you have any

9    physical problems that are affecting you in any way?

10          THE DEFENDANT:  No.

11          THE COURT:  Do you take medication of any kind?

12          THE DEFENDANT:  No.

13          THE COURT:  In the last 24 hours, have you

14    consumed any alcohol or drugs?

15          THE DEFENDANT:  No.

16          THE COURT:  Have you taken pills of any kind?

17          THE DEFENDANT:  No.

18          THE COURT:  Okay.  Where are you at right now?

19          THE DEFENDANT:  Ramsey County.

20          THE COURT:  Where?

21          THE DEFENDANT:  Ramsey.

22          THE COURT:  Ramsey County?  Okay.

23          All right.  Any questions on these matters,

24    Counsel?

25          MR. WINTER:  Nothing from the government.  Thank

1          you.

2                      MR. MATTOX:  No, Your Honor.

3                      THE COURT:  Okay.  All right.  Now, Mr. Boswell,

4          you have received a copy, I believe, of the indictment in

5          this case.  It's a written statement of the charges.  It

6          has a lot of defendants in it, so it's a big document.

7                      Have you read that through?

8                      THE DEFENDANT:  Yes, sir.

9                      THE COURT:  And you know what you're charged

10         with, correct?

11                     THE DEFENDANT:  Yes.

12                     THE COURT:  Okay.  Have you had enough time to

13         meet with Mr. Mattox to talk about the case and about your

14         response to it?

15                     THE DEFENDANT:  Yes.

16                     THE COURT:  Have you been fully satisfied with

17         the assistance that he has provided to you?

18                     THE DEFENDANT:  Yes.

19                     THE COURT:  Okay.  Let's turn to the plea

20         agreement.  In it, Mr. Boswell, as I read it through, you

21         are proposing to plead guilty to Count 19 of the

22         indictment.  That charges you with assault with a dangerous

23         weapon in aid of racketeering in violation of United States

24         law.

25                     And in exchange, the government at sentencing

1    will dismiss the remaining charges, which I believe are

2    Counts 1 and 2.

3              Is that correct?

4              MR. WINTER:  Yes, Your Honor.

5              THE COURT:  Okay.  Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Okay.  The Court has to make a

8    finding that there are facts admitted to which would

9    support a criminal conviction for this charge in Count 19.

10   I'm going to ask Mr. Winter to ask you questions to

11   establish the facts which would support the conviction.

12             Do you understand what we're doing?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Okay.  Go ahead.

15             MR. WINTER:  Thank you, Your Honor.

16             Mr. Boswell, you've got the plea agreement in

17   front of you, correct?

18             THE DEFENDANT:  Yeah.

19             MR. WINTER:  And you've had an opportunity to

20   look at these paragraphs, but number 2 which is called the

21   factual basis, right?

22             THE DEFENDANT:  Yes.

23             MR. WINTER:  This paragraph is lengthy, and it's

24   actually broken down into smaller paragraphs, A through H

25   or J, something like that, right?

1                    THE DEFENDANT:  Yeah.

2                    MR. WINTER:  You've had a chance to read those

3        paragraphs, and you're prepared today to agree that the

4        government could prove those facts if this matter were to

5        proceed to trial, correct?

6                    THE DEFENDANT:  Yes.

7                    MR. WINTER:  And specifically, you're stipulating

8        today that the government could prove that you're a member

9        of the Native Mob, right?

10                   THE DEFENDANT:  Yes.

11                   MR. WINTER:  And that the Native Mob qualifies as

12       an enterprise under federal law, correct?

13                   THE DEFENDANT:  Correct.

14                   MR. WINTER:  And what you're prepared to admit

15       today specifically about your conduct that makes you guilty

16       of Count 19 is an assault that took place in the Duluth

17       area in July of 2010, correct?

18                   THE DEFENDANT:  Yeah.

19                   MR. WINTER:  And those facts are found

20       specifically in paragraph E.  Okay?

21                   So do you remember the events from July 10th of

22       2010?

23                   THE DEFENDANT:  Yes.

24                   MR. WINTER:  Is it true that you had some kind of

25       confrontation with a victim who is a member of a rival

1    gang?

2              THE DEFENDANT:  Yes.

3              MR. WINTER:  And at some point during this

4    confrontation, did you take a baseball bat and strike that

5    individual in the face one or more times?

6              THE DEFENDANT:  Correct.

7              MR. WINTER:  And you have no reason to dispute

8    that that victim suffered what we would call serious bodily

9    injury, meaning a broken, broken check bone, I believe?

10             THE DEFENDANT:  Yes.

11             MR. WINTER:  No reason to dispute that, correct?

12             THE DEFENDANT:  Correct.

13             MR. WINTER:  And also during this incident, you

14   struck two other people with the baseball bat, although you

15   did not injure them as severely as the first victim,

16   correct?

17             THE DEFENDANT:  Correct.

18             MR. WINTER:  So you're not disputing that there

19   were three victims that you hit with a baseball bat that

20   evening, correct?

21             THE DEFENDANT:  Correct.

22             MR. WINTER:  And is it also true that this

23   assault was committed in part, in part to demonstrate that

24   you were a member of the Native Mob and to intimidate

25   members of the rival gang?

1                THE DEFENDANT:  Yes.

2                MR. WINTER:  You may have had a personal beef,

3     but this was part of the motive is that this was also a

4     gang assault, correct?

5                THE DEFENDANT:  Yes.

6                MR. WINTER:  And further, you admit that

7     following the assault you attended a Native Mob council

8     meeting, correct?

9                THE DEFENDANT:  Yes.

10               MR. WINTER:  And during this meeting, you

11    actually bragged to the other members of the Native Mob

12    about how you had kicked off this assault and that you were

13    responsible for this assault that you just admitted to,

14    correct?

15               THE DEFENDANT:  Correct.

16               MR. WINTER:  And so by boasting to the other

17    Native Mob members about this assault, you acknowledge that

18    part of your motivation was to look good in the eyes of

19    your fellow Native Mob members, correct?

20               THE DEFENDANT:  Yeah.

21               MR. WINTER:  And that helped you maintain your

22    status within the gang, correct?

23               THE DEFENDANT:  Yes.

24               MR. WINTER:  Now, are you making any claim today

25    that you're somehow innocent of this assault in aid of

1     racketeering?

2               THE DEFENDANT:  No.

3               MR. WINTER:  Did you commit the assault of your

4     own free will?  No one forced you to do that?

5               THE DEFENDANT:  Correct.

6               MR. WINTER:  Okay.  And the last couple questions

7     are about some of the other elements.  This took place in

8     the District of Minnesota, correct?

9               THE DEFENDANT:  Yes.

10              MR. WINTER:  You've already acknowledged that the

11    Native Mob is an enterprise under federal law, correct?

12              THE DEFENDANT:  Yeah.

13              MR. WINTER:  And do you have any reason to

14    dispute that the Native Mob's activities, which include,

15    for instance, drug trafficking, would affect interstate

16    commerce?

17              THE DEFENDANT:  Yes.

18              MR. WINTER:  You have no reason to dispute that,

19    correct?

20              THE DEFENDANT:  No reason.

21              MR. WINTER:  Okay.  That's all I have for a

22    factual basis, Your Honor.

23              THE COURT:  Anything you would like to add,

24    Mr. Mattox?

25              MR. MATTOX:  No, Your Honor.

 1                THE COURT:  How long have you been a member of

 2      the Native Mob in your view?

 3                THE DEFENDANT:  Couple years.

 4                THE COURT:  Couple years?

 5                THE DEFENDANT:  Yeah.

 6                THE COURT:  So sometime before the July 10th

 7      event?

 8                THE DEFENDANT:  Around there.

 9                THE COURT:  Was that part of when you became a

10      member?

11                THE DEFENDANT:  It was right in the paper about

12      2009, how it says it.

13                THE COURT:  Okay.  All right.  Okay.  The Court

14      finds a sufficient factual basis for conviction of this

15      crime.

16                Paragraph 3, Mr. Boswell, is important.  It sets

17      forth the maximum penalties that are applicable in this

18      case.  20 years in prison, five years supervised release

19      after prison, $250,000 fine, $100 special assessment and

20      restitution.

21                Do you understand that?

22                THE DEFENDANT:  Correct.

23                THE COURT:  Okay.  And supervised release means

24      that after you finish a prison term, you're on supervised

25      release under the supervision of a probation officer, and

1      you have to follow conditions imposed by this Court.  If

2      you violate any of the conditions, you can go back to

3      prison for up to the length of the supervised release term,

4      which would make it a longer prison sentence.

5              Do you understand that?

6              THE DEFENDANT:  Yeah.

7              THE COURT:  Okay.  Now, you and the government

8      have negotiated over the sentencing guidelines as to how

9      they should apply to you.  The Court ultimately will decide

10     how to apply the guidelines and to what extent to give the

11     guidelines attention for the final sentence.

12             The Court has to go through a number of different

13     statutory sentencing factors, including the guidelines

14     which are advisory, before determining a fair sentence.

15     The recommendation is that the base offense level is 14

16     because the underlying crime here is aggravated assault.

17             There would be a four-level increase because of

18     use of a dangerous weapon and a five-level increase because

19     one or more of the victims sustained a serious bodily

20     injury.  Three-level increase due to the number of victims

21     and a three-level downward credit for acceptance of

22     responsibility.

23             The Criminal History Category is believed to be

24     II, but we really won't know that for sure until the

25     probation office does its investigation, but we're looking

1        at, if it is Category II and offense level 23, it's a 51 to

2        63 month guideline range in custody.

3                  Do you understand how we reached that?

4                  THE DEFENDANT:  Yeah.

5                  THE COURT:  Okay.  Now, in this particular kind

6        of a plea agreement, Mr. Boswell, you and the government

7        are agreeing that a 60-month sentence is appropriate, and

8        if the Court ultimately accepts the plea agreement, then

9        the Court agrees to sentence you to 60 months.

10                 Do you understand that?

11                 THE DEFENDANT:  Yes.

12                 THE COURT:  Do you also understand that I will

13       not make a final determination on accepting the plea

14       agreement today.  I don't have enough information in front

15       of me to determine whether a 60-month sentence is a

16       reasonable sentence in this case.

17                 I will decide whether to accept the plea

18       agreement at sentencing after I hear all the relevant

19       information from the probation office.  So because this is

20       under a rule which is under 11(c)(1)(C), if the period of

21       confinement is different than 60 months, both sides can

22       withdraw the plea and go to trial.

23                 Do you understand that?

24                 THE DEFENDANT:  Yes.

25                 THE COURT:  So there is a risk here.  For

1      example, if the Court decides that a 50-month sentence is

2      more appropriate for you, the government may not agree with

3      that and would be able to withdraw from the plea and go to

4      trial with you.

5              Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  You would have that right, too, say

8      if the Court decided that a 90-month sentence or something

9      like that would be more appropriate.  Do you understand

10     that?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Okay.  And you understand that we

13     will not finalize that today.  So there will be some level

14     of uncertainty until we get to the sentencing.

15             Okay?

16             THE DEFENDANT:  Yeah.

17             THE COURT:  Do you understand that?

18             THE DEFENDANT:  Yeah.

19             THE COURT:  Okay.  The fine range is $10,000 up

20     to $100,000.  You would have to pay a $100 special

21     assessment, which you are agreeing to pay, and in paragraph

22     15, both sides are waiving their right to appeal the

23     sentence if it is at 60 months.

24             Do you understand that?

25             THE DEFENDANT:  Yeah.

1           THE COURT:  Okay.  Any questions that you have

2      about the plea agreement?

3           THE DEFENDANT:  No.

4           THE COURT:  Anything else that we should address

5      on the plea agreement, Mr. Mattox?

6           MR. MATTOX:  No, Your Honor, other than I would

7      like to lay out the date of his actual custody.  He was

8      arrested on July 11th, 2010.  He was in continuous state

9      custody until the marshals brought him over to federal

10     custody in January of this year.

11          So he has been in continuous custody since July

12     11th, 2010.

13          THE COURT:  2010?

14          MR. MATTOX:  Yes.

15          THE COURT:  Okay.  So in a state detention

16     facility or --

17          MR. MATTOX:  Yes.

18          THE COURT:  Was there a trial in state court or

19     not?

20          MR. MATTOX:  He was held in Carlton County jail,

21     pled guilty, and then he was transferred to Stillwater when

22     the marshals picked him up from Stillwater.

23          THE COURT:  And what was the conviction for?

24          MR. MATTOX:  Same underlying offenses we have

25     here, Your Honor.

 1                    THE COURT:  I see.  Okay.

 2              Mr. Winter?

 3                    MR. WINTER:  I believe it was assault in the

 4      third degree, and I believe crime committed for benefit of

 5      a gang.

 6                    THE COURT:  I see.  So it's really the same

 7      incidents?

 8                    MR. WINTER:  Same incidents, and we're in

 9      agreement that he will get credit for the time he has been

10      in since July 11th.

11                    THE COURT:  Good.  Okay.  The Court would agree

12      with that.

13              Mr. Winter, anything else about the plea

14      agreement we should address?

15                    MR. WINTER:  No, Your Honor.

16                    THE COURT:  Okay.  So, Mr. Boswell, your position

17      is that you fully understand the plea agreement, correct?

18                    THE DEFENDANT:  Yeah.

19                    THE COURT:  Other than what's in writing in this

20      document and what we've talked about here in court, has

21      anyone made any other promises to you in an effort to get

22      you to plead guilty?

23                    THE DEFENDANT:  No.

24                    THE COURT:  Anyone try to force you to plead

25      guilty?

1                    THE DEFENDANT:  No.

2                    THE COURT:  Are you doing so voluntarily?

3                    THE DEFENDANT:  Yeah.

4                    THE COURT:  And so you agree that you're guilty

5        of this offense?

6                    THE DEFENDANT:  Correct.

7                    THE COURT:  Okay.  Are we relatively certain on

8        the Criminal History II, or are there issues here,

9        Mr. Winter?

10                   MR. WINTER:  I feel pretty comfortable as

11       criminal history predictions go.

12                   THE COURT:  Mr. Mattox?

13                   MR. MATTOX:  I believe so, Your Honor.

14                   THE COURT:  All right.

15                   MR. MATTOX:  We had discussions about that as

16       well.

17                   THE COURT:  It's always a little bit of a -- it's

18       mathematics, so it's sometimes hard to figure that out in

19       advance.

20                   I need to go through a series of rights that you

21       have, Mr. Boswell, to go to trial on these issues.  You

22       have been charged with three crimes, and you have a right

23       to a trial on those issues, and before I can let you enter

24       a guilty plea, I have to be assured that you know what

25       you're giving up, because these are important rights

1    provided to you by the Constitution and laws of the United

2    States.

3              Okay?

4              THE DEFENDANT:  Yeah.

5              THE COURT:  They include the right to plead not

6    guilty to all three charges and to continue that plea

7    throughout all proceedings here in court with the

8    assistance of a lawyer that would be provided to you, a

9    lawyer --

10             If you cannot afford to pay for a lawyer, you

11   would have a lawyer for the entire proceedings.  Certainly

12   if you wanted to go to trial, that lawyer would be with you

13   as well.

14             You have the right to have your case heard

15   quickly, usually within 70 days of the date of the

16   indictment.  Sometimes there are delays that are occasioned

17   by actions that you request the Court to take, and while

18   the Court is deciding that, then the clock stops, but the

19   point is, you don't have to wait long for a trial if you

20   want to go to trial.  We will provide an early trial date

21   for you.

22             Now, you have a right to challenge the evidence

23   that the government has and is prepared to use against you

24   during the trial.  Usually there are motions to suppress

25   evidence that are brought before trial, and you can also

1    bring motions to have the Court not admit evidence during

2    the trial if you believe it's inadmissible for one reason

3    or another.

4         When you plead guilty, you give up forever your

5    right to challenge the evidence.  You can't bring a motion

6    later on and say that the evidence shouldn't have been used

7    against you.

8         You have the right to a trial by a jury, which

9    means that a group of people would be chosen randomly from

10   the people of Minnesota, called into court, and then a jury

11   of twelve, with at least one alternate, would be picked for

12   the trial.  And you and Mr. Mattox would participate in

13   helping to select the jury to get a fair and reasonable

14   jury.

15        You have the right to be present during the trial

16   to see and hear the witnesses called by the government, and

17   you have the right to have them questioned by your lawyer

18   in your defense.  If there are people that you would like

19   to have testify for you, the Court will allow issuance of

20   subpoenas to compel their testimony and also to compel the

21   production of documents and other things that you would

22   like to use at trial.

23        You also have a right to see the evidence that

24   the government is prepared to use during the trial so you

25   can be prepared to respond to it, and the government must

1    turn over immediately to you evidence that would tend to

2    show that you are not guilty of the crime.

3             You are presumed to be innocent of the charge

4    from start to finish of the proceedings.  That presumption

5    means the burden falls entirely on the government to

6    present evidence demonstrating your guilt, and they have to

7    prove that you're guilty beyond a reasonable doubt, which

8    is a very high standard to meet.

9             Do you understand that?

10            THE DEFENDANT:  Yes.

11            THE COURT:  You don't have to prove anything

12   during the trial.  You don't have to prove that you're not

13   guilty or innocent.  You don't even have to present

14   evidence.  If the government presents insufficient evidence

15   on a charge, you can be found not guilty without even

16   responding.

17            That's because the burden is on them and not on

18   you to come forward with evidence.  You have a right to

19   choose not to testify during the trial and no one can force

20   you to testify.  If you do wish to testify, you may waive

21   your constitutional right not to testify and take the

22   witness stand.

23            The jury after the trial is over will deliberate

24   to determine whether the government has proven its case

25   beyond a reasonable doubt, and in order to find you guilty,

1     they must unanimously agree.  All twelve Members of the

2     Jury must agree that you are guilty beyond a reasonable

3     doubt.

4            And if you are convicted following the trial, you

5     have a right to appeal that decision to the Court of

6     Appeals.  If you are found not guilty, the case is over.

7     There is no right that the government has to appeal a not

8     guilty verdict.

9            Now, do you understand, Mr. Boswell, that by

10    entering a guilty plea today if the Court accepts that plea

11    or if the Court defers acceptance until sentencing, then

12    there is going to be no trial, and you will have given up

13    your right to a trial as well as the other rights I've just

14    described for you?

15           THE DEFENDANT:  Yes.

16           THE COURT:  You understand those rights?

17           THE DEFENDANT:  Yeah.

18           THE COURT:  Okay.  I'm going to ask Mr. Boswell

19    to state now on the record how he intends to plead.  Before

20    I do that, Mr. Winter, anything else for the record?

21           MR. WINTER:  No, Your Honor.

22           THE COURT:  How about you, Mr. Mattox?

23           MR. MATTOX:  No, Your Honor.

24           THE COURT:  Okay.  Mr. Boswell, you are charged

25    in Count 19 of the indictment with the crime of assault

1   with a dangerous weapon in aid of racketeering in violation

2   of United States law.

3         How do you now plead to that charge, guilty or

4   not guilty?

5         THE DEFENDANT:  Guilty.

6         THE COURT:  It's the finding of the Court in the

7   case of United States of America versus Shelby Gene Boswell

8   that the defendant, Mr. Boswell, is fully competent.  The

9   Court finds he is capable of entering an informed plea to

10  this charge.

11        Further, the Court finds that Mr. Boswell is

12  aware of the nature of the charge against him, and he is

13  fully aware of the consequences of that plea.  The plea of

14  guilty in the Court's view is knowing, and it is voluntary

15  and supported by a sufficient factual basis.

16        Now, the Court will defer accepting the plea in

17  light of the nature of the plea, the binding nature of the

18  plea and defer that decision until sentencing, and at that

19  time will, if it accepts the plea, will adjudge Mr. Boswell

20  to be guilty of the offense.

21        I will refer you to the United States Probation

22  Office, Mr. Boswell, for the completion of a presentence

23  investigation.  A probation officer will conduct the

24  investigation.  You will be interviewed.  Please cooperate.

25  This is very important.  You may have Mr. Mattox with you

1    when you are interviewed if you wish.

2            After the investigation is done, there will be a

3    written report drafted.  You'll have a chance to review

4    that report with Mr. Mattox.  If you have objections, he

5    can raise them with the probation officer.  Sometimes these

6    matters can be resolved informally.

7            Anything that cannot be resolved, any objections

8    not resolved, will be taken up by the Court at sentencing

9    and resolved after hearing from both sides.  The Court

10   would also make its ultimate determination on the plea

11   agreement at that time.

12           And at sentencing, Mr. Boswell, you have a right

13   to speak, so I will give you that opportunity to say

14   whatever you would like to say before sentencing.  Okay?

15           THE DEFENDANT:  Okay.

16           THE COURT:  Do you have any questions about the

17   process --

18           THE DEFENDANT:  No.

19           THE COURT:  -- going forward?  Any questions?

20           THE DEFENDANT:  No.

21           THE COURT:  Okay.  We have a signed plea

22   agreement?

23           MR. WINTER:  We do, Your Honor.

24           THE COURT:  Hand that up to Holly.  We will have

25   that filed.

1              Okay.  Anything else for this matter?

2              MR. WINTER:  No, Your Honor.

3              THE COURT:  How about you, Mr. Mattox?

4              MR. MATTOX:  Nothing, Your Honor.

5              THE COURT:  Okay.  Very well.  Okay.  This matter

6    will be continued until the date that is set for

7    sentencing, and the matter will be continued until then,

8    and we are in recess.

9              Thank you.

10             THE CLERK:  All rise.

11                       *         *          *

12             I, Kristine Mousseau, certify that the foregoing

13   is a correct transcript from the record of proceedings in

14   the above-entitled matter.

15

16

17

18   Certified by:  s/  Kristine Mousseau, CRR-RPR
                        Kristine Mousseau, CRR-RPR
19

20

21

22

23

24

25

KRISTINE MOUSSEAU, CRR-RPR
(612) 664-5106